JUDGE HARDIN
delivered the opinion oe the court:
On the 20th day of December, 1858, Gifford, Campbell & Co., of Boston, Massachusetts, contracted with D. A. Powell, of Cincinnati, Ohio, for the building of certain iron stills, a steam engine and boiler, and other fixtures, to .be used in the manufacture of coal oil in works then about to be erected by said Gifford, Campbell & Co., on grounds which they had purchased for the purpose at Newport, Kentucky.
After Powell had nearly completed the work, and had delivered a considerable jpart of it on the grounds of Gifford, Campbell & Co., at Newport, the latter informed him that they had determined to abandon the erection of the works, and wished to settle and close the transaction with him; and thereupon Powell proceeded to Boston, where, on the 13th day of April, 1859, a settlement took place, in which it was ascertained or assumed that the work done and furnished by Powell under the contract amounted to the sum of five thousand eight hundred and fifty-one dollars and fifty-eight cents; all of which Powell agreed to take back at the estimated value of two thousand six hundred and one *491 dollars and fifty-eight cents, leaving a balance owing by Gifford, Campbell & Co. to Powell of three thousand two hundred and fifty dollars; of which they paid him two hundred and fifty dollars in money, and, for the remaining three thousand dollars, they gave him their three notes of one thousand dollars each, dated on the 1st day of April, 1859, and drawn by them payable to their own order, at forty-five, sixty, and ninety days respectively.
They also bound themselves to return to Powell, within thirty days, the property which he had delivered under his contract on their grounds at Newport. And Powell, on his part, agreed with them as follows: “ That if said Powell sells the materials named in the above named bill for enough more than the above valuation of twenty-six hundred and one dollars and- fifty-eight cents to make the sum of two hundred and fifty dollars, then he will refund to said Gifford, Campbell & Co. such sum; and any amount he m'ay obtain over and above said amounts shall be for his own use expressly; and said Powell agrees to use his best efforts to dispose of above named materials, that the above named sum of two hundred and fifty dollars may be realized and returned to said Gifford, Campbell & Co.”
In the meantime the appellant, Thomas Greer, claiming that Powell, together with A. L. Greer and others, was indebted and liable to him on account of debts in which he had became their security in the Northern Bank of Kentucky, amounting to over $5,000, had instituted this suit in the Campbell circuit court for his indemnity and relief. And on the day of said adjustment and settlement between Powell and Gifford, Campbell & Co., of Boston, the appellant filed an amended petition, making Gifford, Campbell & Co. defendants to the action, and alleging that they were indebted to Pow *492 ell in at least the sum of $4,000 for castings furnished them, and praying that the same might be attached in their hands.
Upon the filing of the amended petition an order of attachment was sued out, which the sheriff returned as executed by delivering a copy to T. Campbell, who was one of the firm of Gifford, Campbell & Co., and by levying the same on various articles of iron manufacture as the property of Powell. This property appeárs to have been the same that Powell had delivered to Gifford, Campbell & Co., on their grounds at Newport, and which they, in their contract made on the 13th of April, 1859, had undertaken to re-deliver to Powell within the next succeeding thirty days. The levy was made on the 8th day of June, 1859.
Gifford, Campbell & Co. filed an answer .as garnishees on the 13th day of June, 1859, admitting the execution of said three notes of $1,000 each, in the State of Massachusetts, which they allege were mercantile paper, payable to their own order, and indorsed by them to Powell; and by an amended answer filed August 10th, 1859, they allege that two of said notes were in the hands of M. P. Kilburn; and that they were notified by a letter from Kilburn, dated July 26, 1859, that he was the holder of said two notes, and had been since the 25th of April, 1859.
It appears that, shortly after said levy was made, the appellant procured an order to be made by the presiding judge of the Campbell county court, directing the sheriff to proceed to sell said property, and under this order the property for which Gifford, Campbell & Co. accounted in their settlement at two thousand seven hundred and nine dollars and seven cents, as is proven, was purchased in the name of Wm. F. Simrall, a relative of the appel *493 lant, at the price of four hundred and fifty-seven dollars, and thereupon the appellant, claiming to have purchased the property of Simrall, removed the more valuable part of it to the State of Virginia, there to be used in certain oil works in which he was interested.
The circuit court set aside the sale to Simrall, and Gifford, Campbell & Co., by an amended answer and cross-petition, sought to recover against the appellant the value of the property so taken and appropriated by him. It is further alleged and shown by them, as against both the appellant and Powell, that in an action of Powell against them in the superior court of Cincinnati, Ohio, claiming damages for their non-compliance with their agreement to redeliver said property to Powell, he recovered a judgment against them on the 12th day of February, 1860, for twro thousand six hundred and one dollars and fifty-eight cents, which they were compelled to pay. It is also alleged and proved by them that, in an action brought by said Kilburn against them in the superior court of Suffolk county, in the State of Massachusetts, said Kilburn recovered a judgment against them for said two notes held by him, and that they were compelled to pay it.
Powell having died, his death was suggested of record on the 5th day of August, 1862, and on the 17th of April, 1863, the appellant filed an amended petition, making James Rardin, the administrator of Powell, a defendant, and praying to be allowed to revive and prosecute the action against him as such.
The following orders appear to have been subsequently made:
“ And afterwards, to-wit, on the 7th day of September, 1864, the defendant, Rardin, filed his affidavit herein. ,.
*494 “ And afterwards, to-wit, on the 9th day of September, 1864, on motion of James Rardin, administrator of D. A. Powell, deceased, a rule is awarded against the plaintiff to show cause why his petition shall not be dismissed for want of an affidavit of demand made. Thirty days is given the plaintiff to respond; also to file an amended petition.”
And on the 8th day of February, 1865, the appellant filed an amended petition, exhibiting an account against the estate of Powell, as for money paid and assumed in the Northern Bank of Kentucky, as security of Powell, amounting to $5,415 26, properly verified by him, and having the following affidavit annexed :
“ James B. Jones sajrs that he was teller of the Northern Bank of Kentucky, at Covington, while the above payments and assumptions were made by said Thomas Greer, and he believes the same to be correct.
“ J. B. Jones.”
And following the officer’s certificate to this affidavit is the following statement of Rarden: “This account this day presented for payment by Thomas Greer, and.no funds in my hands to pay the same.
“ James Rardin, Administrator.
“ February 8th, 1865.”
Upon hearing the cause the court adjudged that “the plaintiff having failed to revive his action in accordance with the provisions of sections 569 and 571, it is now ordered and adjudged that the same be dismissed without prejudice, and the attachment granted to him be dismissed,” &c.
The court further adjudged that Gifford, Campbell & Co. recover of Powell’s administrator, on their cross-petition, the sums of $725 92, with interest from February 9th, 1860, and $250, with interest from April 13th, *495 1859. And also, that said property purchased by Simrall was not, at the time of the levy and sale, the property of Powell, but belonged to Gifford, Campbell & Co., to whom the sheriff was ordered to restore it.
And it subsequently being made to appear, upon a rule against the sheriff, that the appellant had not returned to him the property levied on and sold under his attachment as aforesaid, it was further adjudged that said Gifford,
■ Campbell & Co. recover against the appellant Greer, on their counter claim, $2,366 02, with interest from January 1st, 1860.
This appeal brings before us for revision these several judgments and rulings of the court, so far as the appellant is affected by them. As no appeal is prosecuted, however, by Powell’s administrator, it will not be necessary to consider so much of the first judgment as is against Powell’s estate.
Upon this appeal the following questions are presented for our determination:
1. Did the court err in dismissing the appellant’s petition ? and if so,
2. Was he entitled to recover against Gifford, Campbell & Co., as garnishees, as to the notes collected by Kilburn ?
3. Was he entitled to recover against them as such, as to their note of $1,000, which remained in Powell’s hands ?
4. Did the court err in adjudging the property sold under his attachment to belong to Gifford, Campbell & Co., and that they recover on account of it $2,366 02 against the appellant?
The first point to be considered is, whether or not the court erred in dismissing the appellant’s petition as to Powell’s administrator. It is insisted for Powell’s admin *496 istrator that this judgment was authorized upon two grounds — 1. Because there had been no order of revivor as prescribed by section 560 of the Civil Code. 2. Because the claim of the appellant, when demanded of Powell’s administrator, was not accompanied by sufficient proof, as required by law.
Although there seems to have been no formal order of revivor, it does appear that, in proper time after the death of Powell had been suggested, the appellant filed an amended petition, making James Rarden, the administrator of Powell, a party defendant to the action, and by a summons thereon he was brought before the court, and afterwards, without questioning the mode of revivor adopted, he appeared, as already shown, and obtained a rule against the plaintiff" to show cause why his petition shall not be dismissed for want of an affidavit of his demand made.”
If the provisions of the Code of Practice on this subject could be so construed as to exclude the. right to revive an action by amended pleading, which we cannot admit, the administrator, in our opinion, waived the objection by appearing and exercising the rights of a defendant duly before the court.
But we do not regard the summary mode of revivor prescribed by the Code as impairing the right to bring any necessary party before the court by other appropriate means; but a personal representative, as well as any other necessary party, may be brought before the court by amended pleading, as contemplated by the 35th section of the Code, which provides, that
“Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete de *497 termination and settlement of the question involved in the action.”
As to the proof of the appellant’s claim, it#is deemed' sufficient to observe, that the affidavit of Jones, who was the teller of the bank in which the payments by appellant, as surety for Powell, are claimed to have been made, seems to furnish prima facie evidence of the account.
We are of the opinion, therefore, that the court erred in dismissing the action as to Powell’s administrator.
To the residue of the judgment, we perceive no valid ground of objection.
The two notes assigned to, and collected by, Kilburn, were negotiable paper, and transferred to him before their maturity. They were not subject to the appellant’s attachment. (Drake on Attachment, section 584.) And as to the remaining note of one thousand dollars, executed and delivered to Powell at the settlement in ' Boston, it seems to us plain that the appellant can occupy no better position, as an attaching creditor of Powell, than Powell’s administrator could in an action ' to enforce the note. The question then arises whether' Powell did or not himself receive such satisfaction of his claims against Gifford, Campbell & Co. as operated to discharge said note. His entire claim originally was, as we have seen, five thousand eight hundred and fifty-one dollars and fifty-eight cents, of which two thousand’ two hundred and fifty dollars was paid in money and the notes assigned to Kilburn, and, for the remaining three thousand six hundred and one dollars and fifty-eight cents Powell took the note in question and agreed to receive back the whole of the machinery and fixtures at the estimated value of two thousand six hundred and’ one dollars and fifty-eight cents, and to refund the sum' *498 of two hundred and fifty dollars paid him in money, in case he should be able to realize it by a sale of the property for that much more than two thousand six hundred and one dollars and fifty-eight cents. According to the original contract prices, the portion of the property which had been delivered at Newport was of the value of two thousand seven hundred and nine dollars and seven cents, while that which remained in Powell’s possession was of the value of three thousand one hundred and forty-two dollars and fifty-one cents.
.Powell, in disregard of the terms of the settlement at Boston, by which he was to retain the property in his possession for which Gifford, Campbell & Co. thus accounted at three thousand one hundred and forty-two dollars and fifty-one cents, and also received back that which had been delivered by. him, the whole of it to satisfy the estimated sum of two thousand six hundred and one dollars and fifty-eight cents, sued Gifford, Campbell & Co. for the property which the appellant had wrongfully attached at Newport, claiming for it the original contract prices, amounting as aforesaid to two thousand seven hundred and nine dollars and seven cents, and thus recovered, for less than half the property, more than the entire sum in payment of which he had agreed to receive the whole of it, and having still in his hands the property for which Gifford, Campbell & Co. had accounted to him at the price of three thousand one hundred and forty-two dollars and fifty-one cents, and which, at. the reduced rate at which he was to receive it back to their credit, appears to have been of the value of one thousand three hundred and ninety-eight dollars and forty-two cents. This sum, it seems to us, operated to extinguish the liability of Gifford, Campbell & Co. on their remaining note to Powell of one thousand dollars. *499 The only remaining question to be considered is, whether the judgment in favor of Gifford, Campbell & Go. against the appellant, for the property wrongfully attached and taken from their possession at Newport, was authorized by the pleadings and evidence.
It is insisted for the appellant, that although the whole controversy was in equity, it was error in the court to determine the value of the property without the intervention of a jury. It is provided by section 343 of the Civil Code, that issues of fact arising in equitable proceedings shall be tried by the court, “ subject to its power to order any issue or issues to be tried by a jury.” It does not appear that the court was asked to exercise the power thus conferred to order a jury, and its failure to do so of its own volition was not an abuse of its discretionary power.
It is also objected that the amount adjudged as the value of the property is excessive. Notwithstanding the subsequent depreciation of the value of such property, probably induced by the effect which the discovery of petroleum had on the business of manufacturing coal oil, it does not appear that, at the time of the seizure and conversion of the property by the appellant, it was worth less than what it had .originally cost the appellees, which the court seems to have adopted as the measure of damages.
As a general rule heretofore recognized by this court, ^ the criterion of damages for the taking and conversion of personal property is the value of the property at the time of conversion. (Lillard vs. Whittaker, 3 Bibb, 92; Sproule, &c., vs. Ford, 3 Littell, 25; see also Sedgwick on the Measure of Damages, 480.) And we' do not perceive in the fact that, in the compromise of Powell’s claims, the appellees had agreed to restore the property to him at a *500 price less than its proportion of the original cost of the fixtures and machinery, any sufficient reason for exempting the appellant from the operation of the general rule above adverted to.
Wherefore, the judgment dismissing the appellant’s action as to Gifford, Campbell & Co., and the judgment in their favor against him, are affirmed; but the judgment dismissing the appellant’s action against Powell’s administrator, &c., is reversed, and the cause remanded, with directions to allow Powell’s administrator and heirs to put in their defense, should they desire to do so, and' for further proceedings not inconsistent with this opinion.